UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NimbeLink Corp., | Case No. 22-cv-2345 (NEB/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Digi International Inc., | |
| Defendant. | |

This matter is before the Court on Plaintiff NimbeLink Corp.'s ("NimbeLink") Motion to Compel ("NimbeLink Motion") (ECF No. 181) and Defendant Digi International Inc.'s ("Digi") Motion to Compel ("Digi Motion") (ECF No. 190). The Court held a hearing on these motions on January 18, 2024 (ECF No. 207). For the reasons given below, the Court denies the NimbeLink Motion and grants the Digi Motion in part and denies it in part.

**I.     The NimbeLink Motion**

The NimbeLink motion seeks: (1) financial information from Digi related to NimbeLink's alleged damages; (2) additional Rule 30(b)(6) testimony from Digi regarding the accused products; and (3) documents and emails from former Digi head of sales, Matthew Lubeley, related to Digi's alleged willful infringement of NimbeLink Patent Nos. 9,497,570 and 9,838,066 (collectively, the "Asserted Patents") (*see* ECF No. 183). In the time since NimbeLink filed its motion, the District Judge issued a claim construction order finding NimbeLink's Asserted Patents invalid (ECF No.

1

239), and the parties subsequently stipulated to dismissing NimbeLink's infringement claims (ECF No. 245).[1] NimbeLink has no remaining active claims in this action.

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense" and "proportional to the needs of the case[.]" NimbeLink argues the information it seeks is relevant to prove its infringement claims and establish damages on those claims (*see* ECF No. 183). But none of the discovery it requests appears relevant to its defenses against the only claim remaining in this lawsuit, Digi's inequitable conduct counterclaim. Since the information NimbeLink seeks is no longer relevant to any active claim in this case, the Court denies the NimbeLink Motion.

## II.   The Digi Motion

The Digi Motion seeks an order compelling NimbeLink and its patent attorney, John Fonder ("Fonder"), to produce: (1) documents related to legal advice concerning NimbeLink's 15/697,767 continuation patent application (the "'767 Continuation Application") and any potential applications related to the '767 Continuation Application ("Potential Applications");[2] (2) documents and communications related to NimbeLink investor presentations; and (3) Fonder's billing records related to his prosecution of NimbeLink's Asserted Patents (ECF No. 193 at 15).

### A.   Background

Digi's requests stem from NimbeLink's purposeful waiver of the attorney-client privilege and work product protections for: "communications and documents that involve: (1) prosecution of the patent applications that resulted in U.S. Patent Nos. 9,497,570 and 9,838,066; and (2) the

---

[1] NimbeLink has reserved the right to appeal the District Judge's Claim Construction Order (ECF No. 245 at 2).

[2] Digi stated on the record at the hearing that the parties resolved Digi's request for documents related to foreign patent applications.

preparation and filing of related provisional application No. 61/936,615." (ECF No. 160-4 at 2). NimbeLink produced documents in connection with its waiver on October 30, 2023—several hours after the District Judge concluded a hearing on claim construction and NimbeLink's motion to dismiss Digi's inequitable conduct counterclaim ("October 30 Productions") (ECF Nos. 160 ¶ 9; 160-8). NimbeLink waived privilege and produced these documents to support its defense against Digi's inequitable conduct claim. (*See* ECF No. 175 at 14 n. 4, stating that NimbeLink "would not have had any reason to waive privilege absent an inequitable conduct claim by Digi.".)

The October 30 Productions included: (1) 283 documents and audio recordings from Fonder; and (2) 25 documents from NimbeLink. (ECF Nos. 160 ¶¶ 9–10; 194 ¶ 2.) Digi contends the Fonder production, in particular, contained information critical to Digi's inequitable conduct defense, including audio files of conversations between Fonder and the lead inventor of the Asserted Patents regarding the patents and prior art, as well as documents "confirming NimbeLink's detailed knowledge of prior art" that Digi alleges NimbeLink withheld from the United States Patent and Trademark Office ("USPTO") (ECF No. 192 at 10) (citing ECF Nos. 161-4; 161-5). NimbeLink and Fonder's productions included: (1) documents discussing related continuation applications, including whether NimbeLink should file a continuation patent application and the prosecution of a continuation patent application (ECF Nos. 195-1, 195-3); and (2) investor presentations and communications underlying such presentations related to prosecution of the Asserted Patents. (ECF Nos. 161-4 at 4:14-18; 161-5 at 3:18-23, 5:15-20; 195-2.)

NimbeLink produced a privilege log in connection with these productions on November 3, 2023 (ECF No. 200 ¶ 2). Fonder produced his privilege log on November 8, 2023 (*see* ECF No. 194-1 at 1). On November 15, 2023, Digi's counsel wrote to NimbeLink regarding alleged

3

deficiencies in Fonder's October 30 production and privilege log. (*Id.*) On December 6, 2023, Digi sent another letter to NimbeLink regarding alleged deficiencies in NimbeLink's October 30 production (ECF No. 194-2 at 1–6).

The parties met and conferred on December 15, 2023 to address, among other issues: (1) NimbeLink's failure to produce documents and information as set forth in Digi's December 6, 2023 letter; and (2) NimbeLink and Fonder's failure to produce documents and information as set forth in Digi's November 15, 2023 letter (ECF No. 200-3 at 2–3). As a result of this meeting, and through subsequent communications, the parties resolved all but one of the issues raised in Digi's December 6, 2023 letter (*see* ECF No. 200 ¶ 4). The sole remaining issue in dispute concerned documents related to NimbeLink's design patent (D731,491), which the Digi Motion does not address. (*See id.*) The December 15, 2023 meeting also resulted in Fonder producing a supplemental privilege log, which addressed some, but not all, of the alleged deficiencies raised in Digi's November 15, 2023 letter (*see* ECF No. 194-3).

Though Digi states that "the parties conducted multiple meet-and-confers" on the issues raised in its motion (*see* ECF No. 192 at 12), the only such meeting actually documented in the record is the one that took place on December 15, 2023 (*see* ECF No. 194 ¶ 3). NimbeLink denies that Digi ever attempted to meet and confer regarding the issues raised in the Digi Motion with respect to NimbeLink's (as opposed to Fonder's) production. (*See* ECF No. 199 at 15; *see also* ECF No. 200 ¶¶ 4, 8.)

### B.  Legal Standard

"The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "The waiver extends

beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* (citing *Weil v. Inv./ Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir.1981)). Rule 502(a) of the Federal Rules of Evidence provides:

> When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

"There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp.*, 412 F.3d at 1349–50 (citing *In re Keeper of the Records XYZ Corp.*, 348 F.3d 16, 23 (1st Cir.2003)).

**C.  Analysis**

**1.  NimbeLink Document Production**

NimbeLink argues Digi failed to properly meet and confer regarding the issues raised in the Digi Motion with respect to NimbeLink's document production, as required by Local Rule 7.1 and the Court's November 28, 2023 Scheduling Order ("November 28 Order") (ECF No. 170 at 2). In its November 28 Order, the Court directed that:

> [T]he parties must meet and confer in a sincere, good faith effort to resolve any disputes related to nondispositive motions on or before December 28, 2023. The meeting must take place **in person** and must be no less than **1 hour** in length. During the meet and confer, the parties must not seek to prevail on minor or unimportant issues, but instead, must focus on advancing this litigation in the most efficient manner possible.

5

(*Id.*)

The only support Digi provides for its claim that the "parties conducted multiple meet-and-confers" on the issues contained in its motion is a citation to its counsel's declaration, which asserts only that a meeting took place on December 15, 2023 (*see* ECF No. 192 at 7) (citing ECF No. 194 ¶ 3).  At this meeting, Digi requested that the parties discuss, in relevant part: (1) NimbeLink's failure to produce documents as identified in Digi's December 6, 2023 letter; and (2) NimbeLink and John Fonder's failure to produce documents and information as set forth in Digi's November 15, 2023 letter (ECF No. 200-3 at 2).  But the only unresolved issue set forth in Digi's December 6, 2023 letter is not contested in the Digi Motion, and the November 15, 2023 letter does not assert any deficiencies in NimbeLink's document production.  Rather, that letter focuses solely on alleged deficiencies in Fonder's document production and privilege log (*see* ECF No. 194-1).[3]

Because: (1) the record only supports a finding that a meet-and-confer took place on December 15, 2023; (2) the agenda for that meeting did not include deficiencies in the NimbeLink production at issue in Digi's Motion; and (3) NimbeLink denies that any meet-and-confer with respect to such issues ever took place, the Court finds Digi has not established that it properly met and conferred with NimbeLink about these issues as the Local Rules and the Court's November 29 Order require.  For these reasons, the Court denies the Digi Motion to the extent that it challenges NimbeLink's document production.

---

[3] The only reference in Digi's November 15, 2023 letter to NimbeLink discovery is a request that NimbeLink supplement its previous interrogatory responses in view of its privilege waiver (ECF No. 194-1 at 7).

### 2. Fonder Document Production

#### a. '767 Continuation Application and Potential Applications

The parties debate whether NimbeLink's waiver of attorney-client privilege and work product protections as to the Asserted Patents effected a subject-matter waiver extending to communications regarding the '767 Continuation Application and related Potential Applications (*Compare* ECF No. 193 at 15–21, *with* ECF No. 199 at 19–21). On this issue the Court agrees with Digi. NimbeLink's discussions with its counsel about whether to disclose prior art to the USPTO in a continuation application, even if abandoned, might potentially support a finding of inequitable conduct with respect to the Asserted Patents. *See Tristrata Tech., Inc. v. Neoteric Cosms., Inc.*, 35 F. Supp. 2d 370, 372 (D. Del. 1998) (reasoning that "pending and abandoned applications may contain information or admissions that clarify, define or interpret the claims of the patent in suit") (citing cases); *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013) (finding deceitful conduct as to related patents helped establish inequitable conduct with respect to asserted patents). Moreover, the Court observes that NimbeLink and Fonder have already produced otherwise privileged documents discussing either the '767 Continuation Application or related Potential Applications (*see* ECF Nos. 195-1; 195-3). Because NimbeLink included otherwise privileged communications regarding the '767 Continuation Application and related Potential Applications in its production, and because this information may be relevant to Digi's claims, the Court finds NimbeLink's waiver of privilege extends to all other communications regarding its prosecution of these applications. *See Thomas v. Marshall Pub. Sch.*, 21-cv-2581 (PJS/DJF), --- F.Supp.3d ----, 2023 WL 5743611, at *11 (D. Minn. Sept. 6, 2023) (finding disclosure of meeting notes with an attorney resulted in subject-matter waiver with respect to topics discussed in the notes). NimbeLink cannot fairly disclose parts of its conversations with

Fonder about the prosecution of its Continuation Application and related Potential Applications as a defense to Digi's inequitable conduct counterclaim, but then assert privilege as a shield to prevent Digi from discovering other privileged communications related to those same applications. *See Fort James Corp.*, 412 F.3d at 1349. The Court thus concludes that NimbeLink has indeed waived any applicable attorney-client or work product protections with respect to the '767 Continuation Application and related Potential Applications.

The scope of NimbeLink's waiver does not end the inquiry, however. That a given document may no longer be privileged does not lead inexorably to the conclusion that it must be produced. The Court is also mindful of the proportionality requirement. Fed. R. Civ. P. 26(b)(1). In this instance, Digi seeks to compel further production from Fonder to advance its claim that NimbeLink improperly failed to disclose prior art to the USPTO (*see* ECF No. 193 at 19–21). No other compelling reason for the production of these documents appears to exist. To require the production of every Fonder communication related to these applications would be disproportionate to the needs of the case. The Court therefore orders NimbeLink to direct Fonder to produce any withheld documents or communications concerning the '767 Continuation Application and related Potential Applications to the extent they might potentially relate or refer in any way to inequitable conduct, prior art or possible prior art, or any decision to omit or disclose such prior art or possible prior art to the USPTO.

### b.     Communications Regarding Investor Presentations

Digi seeks an order compelling NimbeLink to produce email exchanges identified on Fonder's privilege log as communications "for the purposes of seeking and providing legal advice regarding investor presentations." (ECF No. 192 at 22.) Digi argues that, because NimbeLink disclosed certain documents containing legal advice related to investor presentations, NimbeLink

can no longer claim privilege with respect to any document concerning investor presentations. (*Id.*)

The Court cannot conclude that all investor presentation communications *per se* are within the subject matter of NimbeLink's waiver. NimbeLink points out that it disclosed two of the communications at issue before it even made the privilege waiver, and that these documents do not actually request or contain legal advice. Digi points to an audio recording concerning investor communications that does contain legal advice, but NimbeLink states it disclosed that recording because it contained a discussion about the Asserted Patents, as to which the privilege waiver was clear. (*Id.* at 31–32.) To suggest NimbeLink broadly waived privilege as to all communications regarding investor communications simply because a few communications in that context fell within the scope of its waiver as to the Asserted Patents is a bridge too far. This is not an instance in which the communications "ought in fairness to be considered together." *See* Fed. R. Evid. Rule 502(a). The Court cannot infer from this record that NimbeLink is seeking to use some investor communications as a sword against Digi's inequitable conduct claim while withholding similar communications that are less helpful to its defense. Rather, NimbeLink simply appears to have recognized disclosure of the audio recording at issue was necessary because parts of the recording fell within the scope of its waiver regarding the Asserted Patents. The Court declines Digi's invitation to bootstrap NimbeLink's privilege waiver as to the Asserted Patents into a broader waiver of privilege as to any overlapping topic addressed in the disclosed documents. The Court therefore denies Digi's motion to compel further production of investor presentation documents.

### c. Fonder Billing Records

Digi seeks an order compelling the production of Fonder's billing records concerning the prosecution of the Asserted Patents (ECF No. 193 at 25–27). It argues that: (1) Fonder's billing records with respect to the Asserted Patent fall within NimbeLink's privilege waiver over the Asserted Patents; and (2) NimbeLink waived privilege with respect to Fonder's billing records because it disclosed some, but not all, of its conversions with Fonder about fees related to prosecuting the Asserted Patents. (*Id.*) NimbeLink responds that: (1) Digi has failed to establish the relevance of Fonder's billing records; and (2) the disclosed communications about fees did not contain privileged information (ECF No. 199 at 32–37).

The Court agrees that NimbeLink's disclosed communications with Fonder regarding the fees required for particular work were not privileged. *See Kutz v. NGI Capital Inc.*, 22-cv-1623 (NEB/ECW), 2023 WL 3790766, at *12 (D. Minn. June 2, 2023) (finding the amount of attorney fees incurred was not protected by attorney-client privilege) (quoting *Henne v. Great River Regional Library*, 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at *2 (D. Minn. Jan. 4, 2021)); *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013) (holding that fee arrangements fall "outside the scope of privilege because fees are incidental to the substance of representation"). The Court further finds, however, that—to the extent Fonder's billing records contain otherwise privileged information related to his prosecution of the Asserted Patents—the records fall within NimbeLink's waiver of privilege as to the Asserted Patents.

But the proportionality requirement applies here, too. The Court therefore orders NimbeLink to direct Fonder to produce any billing records concerning the Asserted Patents, the Continuation Application or related Potential Applications, but only to the extent such records might potentially relate or refer in any way to inequitable conduct, prior art or possible prior art,

10

or any decision to omit or disclose such prior art or possible prior art to the USPTO. For purposes of clarity, billing records for this work must be disclosed even if the records themselves do not explicitly refer to prior art. The litmus test for production is whether the underlying work involved, or—to the extent the records themselves are not entirely clear—*may have* involved, some analysis or discussion related to prior art or possible prior art. In other words, NimbeLink should err on the side of disclosure if the relevance of a particular billing entry to NimbeLink's inequitable conduct claim is not definitive.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff NimbeLink Corp.'s Motion to Compel (ECF No. [181]) is **DENIED**; and

2. Defendant Digi International Inc.'s Motion to Compel (ECF No. [190]) is **GRANTED IN PART** and **DENIED IN PART**.

    a. The Digi Motion is **GRANTED** as follows:

        i. NimbeLink shall direct Fonder to produce documents concerning the '767 Continuation Application and related Potential Applications, to the extent they might potentially relate or refer in any way to inequitable conduct, prior art or possible prior art, or any decision to omit or disclose such prior art or possible prior art to the USPTO; and

        ii. NimbeLink shall direct Fonder to produce billing records concerning the Asserted Patents, the Continuation Application or related Potential Applications, to the extent such records might potentially relate or refer in any way to inequitable conduct, prior art or possible prior art, or any

11

decision to omit or disclose such prior art or possible prior art to the USPTO.

    b.  The Digi Motion is **DENIED** in all other respects.

Dated: April 12, 2024

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge